# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs November 10, 2009

## STATE OF TENNESSEE v. LANCE MURRAY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-01811    James M. Lammey, Jr., Judge**

---

**No. W2009-00332-CCA-R3-CD  - Filed March 19, 2010**

---

A Shelby County jury convicted the Defendant, Lance Murray, of facilitation of robbery. On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction. After a thorough review of the record and applicable authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Scott Hall (at trial), Memphis, Tennessee, and Harry E. Sayle III (on appeal), Memphis, Tennessee, for the Appellant, Lance Murray.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; Pamela Fleming, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case arises from the robbery of an Advanced Auto Parts store in October of 2006. For this crime, a Shelby County grand jury indicted the Defendant on one count of aggravated robbery. At the trial on this charge, the following evidence was presented: Antonio Smith testified that, on October 16, 2006, between 11:00 and 11:45 a.m., he was working at an Advance Auto Parts store waiting on a customer when the Defendant approached him pointing a gun. Smith noticed the Defendant had a "distinctive voice," a "deep southern drawl type voice, cajun type." He described the Defendant as a black male wearing black pants, a jacket, a dark-colored bandana that covered his nose and mouth, and

a hat. Smith estimated that the Defendant was approximately 5'8" to 6' tall with a "medium" build.

The Defendant told Smith, "Get back, get back. I just want the money," and then said a few curse words. Smith immediately complied and backed up, and the customer fled to the back room of the store. The Defendant grabbed the cash register drawer, ran out the front door, and continued running to the left side of the building. Smith described the cash register drawer as a two-and-a-half to three feet wide, detachable, beige box with a silver door and estimated that the cash register drawer contained approximately $340 to $350. Smith recalled that the Defendant also took the customer's twenty dollar bill that was lying on the counter. Smith stated that the entire incident was captured on the store's video surveillance.

Smith testified that he immediately called police and told them what had happened. Later that same day, the police brought a cash register drawer to the store, and the serial number and the key to the cash register drawer matched the drawer that had been stolen. Smith recalled that the police returned again a few days later with a video line-up, and, after viewing the line-up, Smith identified the Defendant as the person who robbed the store. Smith testified that, because he never saw the face of the person who robbed the store, he made the identification based only upon the Defendant's voice, which he was able to hear on the video. He stated that, although the accent of the voice he identified was not as strong as he recalled, he was able to identify the voice.

Martha Strowder testified that she was at her home on 1300 Cummings, Memphis, Tennessee, October 16, 2006, when she heard a noise outside. She looked out her bedroom window, which faces the street, and saw a young man put something into her garbage can and then clean off his hands. Strowder moved to the living room door, so she could get a better look at the young man, who she saw get in a truck that had unusual markings, including a plate with a painting of skeletons located where the license tag is normally hung. The truck drove to her neighbor's house and then stopped again. Strowder said the truck's occupants watched her as she stood in the doorway and seemed hesitant to leave but finally drove off and turned onto Trigg Street. Strowder testified she then went outside and found a cash register drawer in her garbage can, so she called the police. Strowder testified that police detectives later showed her pictures of the Defendant's truck, and she identified the truck as the one she saw in front of her home.

On cross-examination, Strowder testified that she saw three people in the truck, two people in the front seat and one person in the back seat. She said that the person in the passenger seat was the "young black man" with a "low hair cut," wearing dark pants and a dark shirt, who was standing over her garbage can. Strowder was shown a photographic line-

up, but she was only able to narrow the suspect down to two individuals.

Officer Charles Cathey with the Memphis Police Department testified that, on October 16, 2006, he responded to a call at Strowder's house where he recovered a cash register drawer, which he took to Advance Auto Parts. Officer Cathey recalled that an Advance Auto Parts employee identified the cash register drawer as the one stolen earlier that day. Officer Cathey then turned the cash register drawer in to the Crime Scene Office to be processed for fingerprints.

Robert Conner, an Advance Auto Parts employee, testified he was working on October 16, 2006, when the robbery occurred. Conner said he was in an office set apart from the rest of the store at the time of the robbery but could see what was going on through video surveillance. Conner testified that $453.18 was taken from the cash register during the robbery.

Conner recalled that, after the police initially responded to the robbery, they returned later in the day with a cash register drawer they had recovered. Conner testified that he was able to open the drawer with the store's key and that the drawer contained checks written to Advance Auto Parts.

Officer Anthony Morris, with the Memphis Police Department, responded to a call to be on the look-out for a white truck bearing pictures of skull and bones. He located the vehicle in the driveway of a house located on Trigg and Orleans. Officer Morris was advised to continue patrolling the area, and, as he did, he heard over the dispatch radio that the white truck had left the house on Trigg and Orleans and was now moving toward Walker and Lauderdale. Officer Morris stated he went to Walker and Lauderdale where, the white truck had been stopped by police, and verified that the vehicle stopped was the same vehicle he had seen on Trigg and Orleans**.**

Officer Joseph Poindexter, with the Memphis Police Department, testified he interviewed the Defendant on the day of the robbery, and the Defendant said the white Ford Explorer was his vehicle. The Defendant said he had personalized the vehicle by placing stickers of various skulls and crossbones on the dashboard and the front mirror. He admitted he was driving the vehicle when it was stopped at Lauderdale and Walker and that he had been the only one driving the vehicle all day.

Officer Poindexter stated the Defendant's was carrying $186.06 in his pants pocket. Officer Poindexter recalled that the Defendant had a "thick Cajun accent, very southern." The Defendant explained that he lived in New Orleans but was displaced due to Hurricane Katrina.

Officer Poindexter testified that it was approximately 4.6 miles from the Advance Auto Parts store to Strowder's house where police recovered the cash register drawer, and the drive took him about ten minutes during rush hour traffic. Officer Poindexter stated that the distance between Strowder's house and where police first saw the truck in a driveway, at Trigg and Orleans, was seven-tenths of a mile. The officer said it took him approximately three minutes to drive this distance at the posted speed limit.

Officer Poindexter testified that he created a video lineup that included the Defendant. He explained that this was not the normal procedure but that, because the suspect's face was covered during the robbery, the most distinguishable feature was his voice. The video lineup contained audio, so Smith could hear the subjects in the lineup speak. Officer Poindexter said that Smith had described the Defendant's voice as "Cajun style." Officer Poindexter recalled that the Defendant's voice in the video lineup was not consistent with his voice when they spoke during the interview. He recalled that, during the taping of the video lineup, the Defendant "tried to soften [his accent] up quite a bit" and that "you didn't hear that full accent coming out" in the video.

Officer Poindexter recalled that his partner's cell phone, which rings to the theme of "The Good, The Bad and The Ugly," rang during the taping of the video lineup when the camera was focused on the Defendant. Officer Poindexter explained that he did not stop the video recording at this point because he had been advised that starting and stopping a recording could suggest you are covering up something. The video was played for Smith, who identified the Defendant as the perpetrator. A photographic lineup was shown to Strowder, who was unable to positively identify one individual, but narrowed it down to two, one of whom was the Defendant.

Officer Poindexter testified that he collected a video surveillance tape from the Advance Auto Parts store that confirmed the victim's account of the robbery and description of the perpetrator. The officer said the video first showed a white Ford Explorer, which matched Strowder's description, traveling west on the road that borders the north side of the store. A few seconds later, the robber is seen entering the store from the north side of the store. After the robber leaves the store, the same white Ford Explorer, with skull and crossbone stickers, is seen going the opposite direction on Bluebird.

On cross-examination, Officer Poindexter agreed that, while Smith's description of the robber as a man with a thick, Cajun accent was the type of information he would normally include in a supplement report, he had not included that information in his initial report. Officer Poindexter agreed that his supplement report did not note the robber's Cajun accent until it described a meeting with Smith that occurred two days after the robbery.

Based upon this evidence, the jury convicted the Defendant of the lesser-included offense of facilitation of robbery.

## II. Analysis

The Defendant challenges the sufficiency of the evidence. Specifically, he claims that the evidence is insufficient to establish his identity as the robber in this case. The State responds that the following evidence, which was offered at trial, supports the jury's finding that the Defendant was the robber in this case: Smith's identification of the Defendant based on his thick Cajun accent; Strowder's identification of the individual who discarded the stolen Advanced Auto Parts cash register drawer in a garbage can in front of her house; Strowder's identification of the Defendant's white Ford Explorer as the one she saw outside her house; and the similarity between the Defendant's white Ford Explorer and the white Ford Explorer that appears on the surveillance video shortly before the robbery.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*,

493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant in this case was convicted of facilitation of robbery. One is criminally responsible for the facilitation of a felony, "if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a) (2006). Robbery, as applicable to the case at bar, is "the intentional or knowing theft of property from the person of another by . . . putting the person in fear." T.C.A. § 39-13-401(a) (2006). Theft of property occurs when a person who intends to deprive the owner of property "knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2006). Fear as an element of robbery involves fear of "present personal peril from violence offered or impending" and must be a fear of "bodily danger or impending peril to the person which intimidates or promotes submission to the theft of the property." *State v. Bowles*, 52 S.W.3d 69, 80 (Tenn. 2001) (citations omitted).

After a review of the evidence in the light most favorable to the State, we conclude that there was sufficient evidence presented at trial for a rational trier of fact to find the Defendant guilty of facilitation of robbery. Smith testified that a black man dressed in dark clothing entered the store and, at gunpoint, demanded money and took the store cash register drawer that contained $453.18. Smith testified that the robber spoke with a distinct, thick Cajun accent. Upon reviewing a video lineup that included audio, Smith was able to identify the Defendant as the robber based upon the Defendant's accent. The Defendant's vehicle,

a white Ford Explorer with skull and crossbone stickers and no license tag, was seen on surveillance video just before the robbery driving in the same area from which the robber entered the store. The same distinctive vehicle was seen leaving the area just after the robbery. Shortly thereafter, near the area of the robbery, Strowder noticed the same white Ford Explorer outside her home and a man dressed in dark clothing discard the stolen cash register drawer in one of her garbage cans. Police found the Defendant in the area, driving a white Ford Explorer, dressed in dark clothing, with $186.06 in cash on his person. The Defendant admitted ownership of the white Ford Explorer, and he stated that he was the only person who drove the car on that day.

The Defendant argues that the identification of the Defendant as the perpetrator in this crime is flawed. He bases this argument on the fact that Smith could only identify him by his voice. He further asserts that the line-up was tainted by a cell phone ring playing the theme song from "The Good, the Bad, and the Ugly," while the camera was focused on him, and Strowder could not positively identify the Defendant from the photographic lineup. We agree that the identity of the perpetrator is an essential element of any crime, and therefore must be proven by the State beyond a reasonable doubt. *State v. Rice*, 184 SW.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). We would also note that issues of identity and credibility are classic jury questions. *State v. Gregory Mullins*, No. E2004-02314-CCA-R3-CD, 2005 WL 2045151, at *5 (Tenn. Crim. App., at Knoxville, Aug. 25, 2005), *no Tenn. R. App. P. 11 application filed*. And, as stated above, questions concerning the credibility of the witnesses are resolved by the trier of fact. *Evans*, 108 S.W.3d at 236. This Court does not second-guess the weight, value, or credibility afforded to the evidence by the jury. Therefore, we conclude that the State presented sufficient evidence of identity to support the Defendant's convictions.

Based upon the evidence, we conclude that a rational trier of fact could find, beyond a reasonable doubt, that the Defendant is guilty of facilitation of robbery. Thus, the Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude the record sufficiently supports the Defendant's conviction for facilitation of robbery. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE